NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—April, 1883.

## DUFFY v. SMITH.

*In the matter of the estate of* WILLIAM E. DUFFY, *de-
ceased.*

The probate court of another state is not a court of competent jurisdiction
to make a decree discharging administrators appointed by a Surrogate's
court of this State from their obligation to account to the latter court
for property of decedent received by them, and made subject, by the
laws of this State, to the Surrogate's jurisdiction.

Administrators appointed, by a court of another state, upon the estate of a
resident thereof, after the grant of letters to them here, and after they
had taken possession of property here, cannot be allowed to withdraw
such property from this State, until they have accounted for it here,
especially where the same has been vouched for in the petition for
letters, and the inventory, filed here by them.

Decedent died intestate in August, 1876, in Connecticut, where letters of
administration upon his estate were issued, out of a Probate court, to
M., in September of that year.   In 1877, letters of administration
upon his estate were issued by the Surrogate of New York county, to
D. and K., upon D.'s affidavit that decedent left assets in that county.
In 1878, M. was removed by the Connecticut court, and D. and K.
were appointed in his stead.   In 1881, D. and K. filed accounts with
the Surrogate here, pursuant to an order obtained by one of the next
of kin, showing $7,600 to have been collected and come to their hands
in New York county.   The account, being contested, was ordered to a
reference, pending which the administrators were cited by the Connec-
ticut court to appear before it, on July 3rd, 1882, and account, which
they did.   On July 6th, they filed their account there, showing a defi-
ciency of over $10,000, and obtained a decree allowing the same, and
awarding them and their counsel an allowance of $3,750.   A copy of
the citation was directed to be posted on a sign post and published
in a town newspaper.   The Connecticut accounting was not contested.
On a motion, before the Surrogate here, to vacate the order of refer-
ence, and dismiss all proceedings, on the ground of want of jurisdic-
tion, and of *res adjudicata,*—

*Held,* that the Surrogate had authority, when he first assumed jurisdiction,
to pass upon the administrators' accounts (Code Civ. Pro., § 2476,

subd. 3; § 2735); that, independently of the features of the Connecticut decree, he was not divested of authority by the proceedings in that state; and that the motion must be denied.

APPLICATION by James Duffy and William H. Kelly, administrators of decedent's estate, to dismiss the proceedings on their accounting; opposed by Mary Smith, a sister and heir-at-law of decedent, and others. The facts appear sufficiently in the opinion.

JOHN M. MACKAY, WILLIAM FULLERTON and JOHN FLANAGAN, *for administrators.*

GEORGE F. LANGBEIN, *for Mary Smith.*

L. W. EMERSON, *for next of kin.*

THE SURROGATE.—The decedent resided in the State of Connecticut, where he died intestate, in August, 1876. Letters of administration upon his estate were, in September, 1876, issued to one Dennis McQuillan, out of the Probate court of the district in which the decedent had died.

McQuillan was superseded in 1878 by James Duffy and William H. Kelly, who, more than a year before, had been granted letters of administration by the Surrogate of this county. Such letters had been issued upon the application of James Duffy, who swore, in his petition, that the decedent "died possessed of personal property in the city of New York, not exceeding in value $6,000, or thereabouts."

An inventory, afterward filed in the office of the Surrogate, and disclosing assets amounting to $6,000, contained, according to the affidavit of administrator Kelly, a true statement, as far as he knew, of all the personal property of the deceased in the State of New York. Upon

citation at the instance of one of the next of kin, Mr. Kelly, in June, 1881, filed his account in this court. It thereby appeared, among other things, that the sum of $7,600 had been collected, and had come to his hands in the State of New York. To this account objections were interposed by nearly all of decedent's next of kin—as also to a similar account subsequently filed by administrator Duffy.

By order of the Surrogate, these accounts and objections were submitted to a referee for hearing and deter. mination. While this reference was pending, in September, 1881, a stipulation was entered into before the referee, whereby it was, in effect, agreed that administrator Kelly should render an additional account, including all assets, from whatever source derived, which had at any time come into his possession or under his control. This stipulation was signed by the attorneys for the adult contestants, by the attorney for administrator Duffy, by the special guardian for infant objectors, and by administrator Kelly personally, who appended the following statement to an account which, in pursuance of such stipulation, was subsequently filed in October, 1881 :

" The reason for including the Connecticut estate in this account is because of my desire to be discharged upon this accounting, if legal, and to be relieved from any further accounting, here or in Connecticut."

He charged himself at this time with :

| | |
|---|---|
| Amount of Connecticut inventory | $18,512 04 |
| Amount of New York inventory | 6,000 00 |
| Increase | 2,168 82 |
| | $26,680 86 |
| He credited himself in all with | 24,895 48 |
| Leaving an apparent balance in his hands of | $1,785 38 |

The reference again proceeded. A large amount of testimony was taken, and in July, 1882, was submitted to the Surrogate, together with the report of the referee, to the effect that the administrators should be held accountable, in excess of the sums wherewith they charged themselves, with various amounts, aggregating about $11,000. Upon application by Mr. Kelly, who claimed that the reference had been brought to an unexpected close, so that he was deprived of opportunity to make full presentation of the evidence in his behalf, the matter was again submitted to the referee in November, 1882.

After several sessions, during which little testimony was taken, counsel for administrator Duffy, in January 1883, procured from the Surrogate an order to show cause why the order of reference should not be vacated, and all proceedings in this court be dismissed on the ground of want of jurisdiction, and on the further ground that the accounts of the administrators had been settled and adjudicated by a court of competent jurisdiction in the state of Connecticut.

Duffy's affidavit, upon which the order to show cause was based, alleged that, late in June, 1882, while the reference was pending here, he and his co-administrator were cited by the Probate court of Connecticut, from which they had obtained letters of administration, to appear at Portland in that State, on July 3, and to show cause why they should not there render an account of their doings; that they attended with counsel in pursuance of such citation, and that the pendency of proceedings before the Surrogate of this county was suggested as a sufficient ground for delay in accounting elsewhere; that the court would not heed the suggestion, but

directed that the administrators account within three days; that thereupon, on the 6th of July, they filed accounts, disclosing all their proceedings, both in this State and in the state of Connecticut, and that, on the day of their presentation, such accounts were examined by the Probate court, and adjudicated to be just and true by a decree, whereof the following is a copy:

"The administrators on said estate, pursuant to the order of this court, filed and exhibited their administration account with said estate, showing debts and charges paid by said administrators, and allowances to be $36,-393.75, and assets of personal property $26,392; showing a deficiency over and above personal estate to be $10,001.-55; which said account is allowed by this court."

The following awards to parties and to counsel, made by the Probate judge, constitute a part of this deficiency: To administrator Kelly, $2,000; to administrator Duffy, $750; to Duffy's counsel, $500; to Kelly's counsel, $500.

In view of the long delays incident to the New York litigation, the celerity with which the accounts of the administrators were settled in Connecticut, seems almost startling, until it is discovered that the order for an accounting, while it directed service upon both the administrators at their several places of abode, in New York, made no provision for similar service upon the three brothers of decedent, or upon his sister, all of whom reside in this city, and each of whom, as the administrators well knew, was strenuously contesting the accuracy of their accounts.

It is true that the Connecticut court directed that a copy of the citation should be posted on a sign post in the town of Portland, and that there should be a publication

of its contents in a newspaper printed in the town of Middletown; but, as none of the dissatisfied next of kin, so far as it appears, ever saw or was likely to see either the sign post or the newspaper, the dispatch with which the accounts were discovered to be correct, ceases to be remarkable.

Now, whether the proceedings culminating in this Connecticut judgment were or were not in accordance with the law of that state, so as to be legal and binding until they shall be set aside or the judgment reversed, is unnecessary to be here determined. The validity and effect of that judgment may be the subject of consideration hereafter. But, unless the Surrogate lacked authority to pass upon these administrators' accounts when he first assumed jurisdiction, I am convinced that he possesses that authority now, in spite of the proceedings in Connecticut. If the statements of the administrators themselves in the various papers on the files of this court, are to be taken as true, the Surrogate's jurisdiction originally is not open to dispute.

Section 2476 of the Code of Civil Procedure provides that "the Surrogate's court of each county has jurisdiction exclusive of every other Surrogate's court . . . to grant letters of administration . . . : (subd. 3) Where the decedent, not being a resident of this State, died without the State, leaving personal property within that county and no other, or leaving personal property, which has, since his death, come into that county and no other, and remains unadministered."

That the decedent left assets which were in this county at the time of his death seems to be now disputed, though it was one of the allegations of the

petition for letters of administration. But that he left assets which have since his death come into this county is very clearly established by the motion papers; and there is no claim that any such assets have come into any other county of this State.

By reason of these facts, the Surrogate acquired jurisdiction over these administrators, and was empowered under the Code "to direct and control their conduct and settle their accounts" and to make orders requiring them to attend and be examined touching any personal property owned or held by the decedent at the time of his death.

The Connecticut administrators, appointed nearly two years subsequently to the grant of letters in this county, and long after the taking possession of property here to the amount of at least $7,600, cannot be allowed to take this fund from New York, until it has been here accounted for. If there is any question about the obligation to account here for other amounts, certainly none exists as to the amount which, by their petitions, inventory and account, is vouched for by the administrators themselves.

I fully recognize the doctrine that the decision of a court of competent jurisdiction is final and conclusive upon the parties, and that matters therein determined cannot be again contested between the same litigants, either in the same tribunal or another. But the Probate court of Connecticut was not a court of competent jurisdiction, to make any decree discharging administrators appointed by this court, from their obligation to account to this court for the property of decedent, received by them and made subject, by the laws of this State, to the

Surrogate's jurisdiction.    This application must, there-fore, be denied.

Ordered accordingly.